IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:13-CV-161-D

| | |
|---|---|
| MERCEL BROOKS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Mercell Brooks ("plaintiff") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying his application for supplemental security income ("SSI") on the grounds that he is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 27, 29). Each party filed a memorandum in support of its motion. (D.E. 28, 30). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (D.E. 32). For the reasons set forth below, it will be recommended that plaintiff's motion be allowed, the Commissioner's motion be denied, and this case be remanded.

I.  BACKGROUND

  A.  Case History

Plaintiff filed applications for SSI on 26 October 2009, alleging a disability onset date of 1 September 2004. Transcript of Proceedings ("Tr.") 13. The applications were denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 11. On 1 March 2012, a hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a

vocational expert testified.[1] Tr. 34-65. In a written decision dated 19 March 2012, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 13-23. Plaintiff timely requested review by the Appeals Council. Tr. 9. On 4 June 2013, the Appeals Council admitted additional exhibits, namely, a letter from plaintiff's counsel (Tr. 243-45) and an affidavit by plaintiff (Tr. 247), but denied the request for review. Tr. 1-6. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 2 August 2013, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Am. IFP Mot. (D.E. 2); Order Allowing Am. IFP Mot. (D.E. 7); Compl. (D.E. 8)).

      B.      **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

---

[1] The hearing was initially convened on 20 September 2011, but was continued at plaintiff's request to enable him to obtain representation. *See* Tr. 25-33.

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

3

### C. Findings of the ALJ

Plaintiff was 35 years old on the date she filed her application for SSI and 37 years old on the date of the administrative hearing. *See* Tr. 21. She testified that she did not complete high school and was found by the ALJ to have a limited education. Tr. 54; 21 ¶ 5. Her past relevant work includes work as a line server, hand packer, and assembler of small products. Tr. 21 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 15 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: migraines and asthma. Tr. 15 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 15 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform medium work with certain limitations. Tr. 16 ¶ 4. Medium work involves lifting, carrying, pushing, or pulling up to 50 pounds occasionally and 25 pounds frequently. *See* 20 C.F.R. § 416.967(c).[2] The specific limitations were as follows:

> [S]he would be able to frequently climb ramps and stairs; occasionally climb ladders, ropes, or scaffolds; frequently stoop, balance, and kneel; occasionally crouch; and frequently crawl; as a result of triggers of migraines, the claimant would have to be limited to occasional direct sunlight; avoid concentrated exposure to fumes, odors, dusts, and gases; avoid concentrated exposure to hazards; as a result of the concentration problems caused by the headaches, the claimant would be limited to simple routine repetitive tasks, meaning that she would be able to apply common sense understanding to carry out oral, written, and diagrammatic instructions; and she would have no difficulty getting along with coworkers or the public.

---

[2] *See also Dictionary of Occupational Titles* (U.S. Dep't of Labor 4th ed. rev. 1991) ("DOT"), app. C § IV, def. of "Medium Work," http://www.oalj.dol.gov/libdot.htm (last visited 23 June 2014). "Medium work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

Tr. 16 ¶ 4.

Based on his determination of plaintiff's RFC, the ALJ found at step four that plaintiff was capable of performing her past relevant work as a line server, hand packer, and assembler of small parts. Tr. 21 ¶ 5. In the alternative, at step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of patient escort/transporter, promotional items inserter, and laboratory aid. Tr. 22 ¶ 5. The ALJ accordingly concluded that plaintiff had not been under a disability since the date she filed her application for SSI, 26 October 2009. Tr. 22 ¶ 6.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir.

1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II.     OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the ALJ erred in (1) his evaluation of the medical source opinions regarding her migraines and (2) his assessment of her credibility. The court will address each issue separately.

## III. ALJ's EVALUATION OF MEDICAL OPINION EVIDENCE

### A. Opinion of Dr. Richman

Neurologist Jonathan M. Richman, M.D., saw plaintiff three times between 14 November 2011 and 3 January 2012. *See* Tr. 18-19 ¶ 4; 420-23. On 7 February 2012, he completed an RFC questionnaire in which he found plaintiff's migraine impairment to be disabling in its severity. Tr. 424-29. As summarized by the ALJ:

> Dr. Richman opined that the claimant was capable of low stress jobs, but she . . . would be precluded from performing even basic work activities and would need a break from the workplace, she would require daily unscheduled breaks and would need to lie down or sit down, she would have good and bad days, and she would miss more than four times a month. Dr. Richman noted the claimant had no physical limitation, but her headaches would likely result from mild to moderate exertion.

Tr. 19 ¶ 4.

The ALJ gave Dr. Richman's opinion "little weight." Tr. 19 ¶ 4. Plaintiff argues that the ALJ erred in doing so. The court agrees.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D. W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 416.927(d)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(d)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The opinions of physicians and psychologists, and other sources on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. 20 C.F.R. § 416.927(e)(1), (3). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 (2 July 1996).

Here, the ALJ explained his attribution of little weight to Dr. Richman's opinion as follows:

> The undersigned gives little weight to Dr. Richman's opinion and finds that it was *generally inconsistent with the objective medical evidence* as well as his own records. The undersigned notes that Dr. Richman's *neurological examinations were unremarkable*. The *funduscopic examinations were normal*. The examinations showed that *the claimant had normal reactions in her eyes to light*. Here, Dr. Richman was stating that the claimant had sensitivity to lights. The undersigned further notes that when the claimant was released from prison, upon immediately being examined, she reported her headache was nonradiating and it was not associated with nausea, vomiting, photophobia, problems with balance, coordination, falling dropping, numbness, tingling or any other paresthesias (Exhibit 2F). In addition, on January 3, 2012, Dr. Richman noted that the claimant's headaches were stable with the medication that he had prescribed for her. The undersigned notes that *the claimant's physical examinations have been unremarkable, with no motor or neurological deficits as noted above*.

Tr. 19 ¶ 4 (emphasis added).

As can be seen, the ALJ relied heavily on the lack of objective medical evidence of plaintiff's migraines in discounting Dr. Richman's opinions. Plaintiff correctly argues that such reliance was error. As this court has recognized, migraines cannot be diagnosed or confirmed through laboratory or diagnostic testing. *See, e.g.*, *Taylor v. Astrue*, No. 7:10-CV-149-FL, 2011 WL 2669290, at *3 (E.D.N.C. 7 July 2011), *adopting in relevant part mem. and recommendation* 2011 WL 2669295, at *3-6 (23 May 2011); *Duncan v. Astrue*, No. 4:06-CV-230-FL, 2008 WL 111158, at *6 (E.D.N.C. 4 Dec. 2007), *mem. and recommendation adopted by* 2008 WL 111158, at *1 (8 Jan. 2008); *see generally Hua v. Astrue*, Civ. Act. No. 07-cv-02249-WYD, 2009 WL 524991, at *4 n.1 (D.C. Colo. 2 Mar. 2009) (collecting cases). The ALJ's reliance on the lack of objective evidence in discounting the opinion of Dr. Richman requires remand of this case. *See, e.g.*, *Sidbury v. Astrue*, No. 7:08-CV-168-FL, 2009 WL 3029741, at *1 (E.D.N.C. 22 Sept. 2009), *adopting mem. and recommendation*, 2009 WL 3029741, at *9 (25 Aug. 2009); *Duncan*,

2008 WL 111158, at *1, *adopting mem. and recommendation*, 2008 WL 111158, at *6-7, *7 n.1; *cf. Ortega v. Chater*, 933 F. Supp. 1071, 1076 (S.D. Fla. 1996) (ordering award of benefits).

Other reasons cited by the ALJ are also of concern. For example, his reliance on the disparity between plaintiff's description of her headaches on 1 July 2009 immediately after her release from prison (*see* Tr. 278) and Dr. Richman's characterization of them in his 7 February 2012 questionnaire does not account for the more than two-and-a-half-year span between the reports.

Further, the fact that plaintiff told Dr. Richman, in January 2012, that her headaches were "generally stable" (*see* Tr. 420) is not the equivalent of a finding of improvement, as the ALJ's finding suggests. *Kiefer v. Comm'r of Soc. Sec.,* No. 5:13-cv-679, 2014 WL 66717, at *5 (N.D. Ohio 8 Jan. 2014) (citing *Hicks v. Comm'r of Soc. Sec.*, No. C-1-08-24, 2009 WL 3127183, at *3 (S.D. Ohio 28 Sept. 2009) ("Stable" is a medical term that simply means a condition is neither better nor worse)); *Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1030 (E.D. Wis. 2004) ("One can be stable and yet disabled."); *Davisson v. Astrue*, No. 1:10-cv-2411, 2011 WL 2461883, at *10 (N.D. Ohio 17 June 2011) ("A person can have a condition that is both 'stable' and disabling at the same time.") (citations omitted)). That is particularly true here where the record of the same visit suggests that plaintiff's headaches were occurring almost every day ("It does sound as if she uses some type of off-the-shelf analgesics on nearly a daily basis.") and indicates that Dr. Richman doubled the dosage of her migraine medication, Effexor (from 75 to 150 mg. daily). Tr. 420.

The ALJ, of course, relies on additional reasons beyond lack of objective medical evidence in his evaluation of Dr. Richman's opinion. Even if those reasons were considered

separately from the deficient reasons noted, they cannot be said to establish that the ALJ's evaluation was legally sufficient and the errors thereby harmless.

In addition, the inconsistency suggested by the ALJ between Dr. Richman's normal funduscopic examinations of plaintiff and Dr. Richman's finding in the RFC questionnaire that plaintiff is sensitive to light appears illusory. In the questionnaire, Dr. Richman finds that bright lights can trigger and worsen plaintiff's headaches (Tr. 425 ¶¶ 7, 8) and that she experiences photosensitivity when having a headache (Tr. 425 ¶ 4). The record does not show that these findings are inconsistent with a normal funduscopic examination when plaintiff is not experiencing a headache, the apparent situation during the examination in question.

Nor are the errors noted negated by the fact that the ALJ "has taken into consideration the claimant's subjective complaints of migraines and related symptoms, and has lowered her [RFC] to a reduced range of medium." Tr. 19 ¶ 4. Proper evaluation of Dr. Richman's opinion by the Commissioner could result in a more limited RFC than the ALJ found, a smaller available occupational base, or a determination of disability, among other potential material differences in outcome. For this and the other reasons discussed, the flaws in the ALJ's evaluation of Dr. Richman's opinion require remand.

B. **Opinions of Consulting Physicians**

Nonexamining state agency consulting physicians Melvin L. Clayton, M.D. and Elizabeth S. Hoyt, M.D., completed Physical RFC Assessment forms for plaintiff on 29 January 2010 and 26 July 2010, respectively. Tr. 376-83 (Dr. Clayton), 394-401 (Dr. Hoyt). Dr. Clayton found plaintiff capable of medium work with no postural, manipulative, visual, communicative, or environmental limitations. Tr. 376-80. Dr. Hoyt also found plaintiff capable of medium work, albeit with one limitation (*i.e.*, avoidance of concentrated exposure to fumes, odors, dusts,

gasses, poor ventilation, etc.). Tr. 394-98. The ALJ gave their opinions "significant weight . . . to the extent that they concluded the claimant had the ability to perform medium work." Tr. 21 ¶ 4. Plaintiff argues that the ALJ erred in doing so. Again, the court agrees.

The same basic standards that govern evaluation of the opinions of treating medical sources apply to nonexamining sources. *See* 20 C.F.R. § 416.927(e). More weight is generally given to the opinion of a treating source than to the opinion of a nonexamining source. *See id.*(d)(1), (2). Under appropriate circumstances, however, the opinions of a nonexamining source may be given more weight than those of a treating source. *See* Soc. Sec. R. 96-6p, 1996 WL 374180, at *3 (2 July 1996).

Here, the ALJ explained that he gave the consultants' opinions greater weight because "their assessments were generally consistent with the overall evidence of record." Tr. 21 ¶ 4. The "overall evidence of record" would necessarily include the objective evidence the ALJ cited in his analysis of Dr. Richman's opinion, and elsewhere, purportedly relating to plaintiff's migraines. Given the ALJ's misapprehension of the significance of such evidence, as well as the other seeming deficiencies discussed in the ALJ's evaluation of the medical evidence, the court cannot say that the ALJ's assessment of the consultants' opinions is proper. As with the ALJ's evaluation of Dr. Richman's opinion, the ALJ's inclusion in plaintiff's RFC of accommodations for her migraines does not negate this deficiency. This implicit error in the ALJ's assessment of the consultants' opinions therefore also requires remand.

IV.   **ALJ'S ASSESSMENT OF PLAINTIFF'S CREDIBILITY**

At the hearing, plaintiff testified at length regarding limitations she contends are imposed by her impairments. Tr. 37-58. The ALJ reviews this testimony in his decision. Tr. 16-17 ¶ 4. Plaintiff's allegations are also reflected in a log she kept of her headaches (Tr. 340-45) and other

Case 7:13-cv-00161-D   Document 33   Filed 06/23/14   Page 12 of 17

evidence. The ALJ found plaintiff's allegations of the limitations arising from her impairments, including the statements in the log, not fully credible. Tr. 19-20 ¶ 4. Plaintiff argues that this determination is erroneous. The court agrees that the ALJ committed legal error.

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d at 593-96; 20 C.F.R. § 416.929(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cv1742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable physical or mental impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 19 ¶ 4. At the second step of the credibility assessment, the ALJ found that "the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 19 ¶ 4.

The ALJ explained his ruling as follows:

> The undersigned finds that the claimant's allegations of the severity of symptoms not fully credible. Despite the claimant's subjective complaints, *the objective medical evidence showed that the claimant was not as limited as alleged*, and that she was capable of performing basic work activities at less than the full range of medium work as noted . . . in the [RFC] . . . .
>
> The overall evidence of record showed that *the claimant's physical examinations were generally unremarkable* as noted above.
>
> . . . .
>
> With regards to the claimant's migraines, examinations by Dr. Matthews showed that *her cranial nerves were normal, with normal pupil reaction to light in right and left eyes; she had normal motor and neurologic systems, and she ambulated independently, with normal gait and station*. Dr. Matthews noted that the claimant overused caffeine and that there was concern about her tobacco addiction (Exhibit 14F). Similarly, treatment notes from Dr. Richman showed that *the claimant's physical examinations were unremarkable. A funduscopic examination was benign with normal vessels; on motor examination, she had full power in the upper and lower extremities; her tone was normal; sensory examination was intact throughout; her gait was fluid*; and on January 3, 2012, Dr. Richman examined the claimant and noted she reported her headaches were generally stable (Exhibit 15F).
>
> In addition, the undersigned notes that the claimant's overall treatment for her migraines was conservative, with no hospitalizations and there were significant periods when the claimant was not taking her medication. One would think that had the claimant's migraines been as severe as she alleged, she at least would have taken her prescribed medications more consistently. . . . As noted above, the claimant worked full time in a work release program prior to being released from prison, she stopped working immediately after being released from prison for reasons other than those related to her alleged impairments, and *her physical examinations were generally unremarkable*.

Tr. 19 ¶ 4 (emphasis added).

Regarding plaintiff's headache log, the ALJ found:

> The undersigned has reviewed the claimant's log of occurrences of her headaches, but notes that this is a self-reported document with no confirmation by a disinterested third party. *The entries in the log were generally inconsistent with the objective medical records* (Exhibit 16E). For example, in September 2011, although the claimant complained of headaches, the objective medical evidence showed that *the claimant had an MRI of the brain that was negative* (Exhibit

> 15F). Similarly, treating notes from Dr. Matthews also showed that *the claimant had another MRI in the past that was negative* (Exhibit 14F). Treating notes also showed that the claimant, immediately after release from prison, complained about her headaches, but was not taking her medication, and upon examination, she was generally in no acute distress (See Exhibits 3F, 4F, 5F, 8F, and 10F). The undersigned further notes that prior to being released from prison, the claimant was working full time on a work-release during her incarceration, although she had been diagnosed with asthma and migraines. After being released, she testified that she immediately stopped working due to reasons unrelated to her asthma and migraines.

Tr. 19 ¶ 4 (emphasis added).

As can be seen, the ALJ discredited plaintiff's allegations regarding her migraines, including her log of headaches, to a substantial degree on the basis of the lack of objective medical evidence of the migraines, just as he did with respect to the medical opinion evidence. Reliance on such evidence is no less erroneous with respect to the ALJ's credibility determination than with respect the evaluation of the medical opinion evidence. As the Seventh Circuit has stated:

> The ALJ also appears to have thought, incorrectly, that the [normal] neurological test results somehow undercut [the plaintiff's] claims that her migraines are severely painful. In fact, nothing in the record suggests that these tests can confirm either the existence of migraines or their likely severity. If anything, [plaintiff's treating physician's] conclusion that [the plaintiff] suffered from severe migraines even in the face of the normal test results shows that there are no diagnostic tests that work particularly well for migraines.

*Strickland v. Barnhart*, 107 Fed. Appx. 685, 688 (7th Cir. 2004); *accord Taylor*, 2011 WL 2669290, at *3 (finding that ALJ impermissibly relied exclusively on lack of objective medical evidence in discounting plaintiff's credibility); *Sidbury*, 2009 WL 3029741, at *6-7 (finding that ALJ improperly relied at least in part on objective medical evidence in discounting plaintiff's credibility), *mem. and recommendation adopted by* 2009 WL 3029741, at *1; *Duncan*, 2008 WL 111158, at *8, *mem. and recommendation adopted by* 2008 WL 111158, at *1 (same); *Ortega*, 933 F. Supp. at 1076 (same); *see also Parsley v. Astrue*, No. 02:08-cv-01227, 2009 WL

1940365, at *4 ("[A]n ALJ must be particularly diligent in making credibility determinations with regarding to migraines, because laboratory tests cannot prove their existence at this time."). The ALJ also, of course, relies, problematically, on plaintiff's statement about her symptoms in July 2009 immediately after her release from prison and her statement about the general stability of her headaches to Dr. Richman in January 2012. While the ALJ cites additional reasons beyond the lack of objective medical evidence for his credibility determination, the court cannot say that such other reasons standing alone are legally sufficient to support the credibility determination and that the errors noted are therefore harmless.

The court concludes that the ALJ's assessment of plaintiff's credibility was erroneous. This error requires remand of this case, independent of the errors in the ALJ's evaluation of the medical opinion evidence. *See, e.g., Taylor*, 2011 WL 2669290, at *6; *Sidbury*, 2009 WL 3029741, at *1, *adopting mem. and recommendation*, 2009 WL 3029741, at *9; *Duncan*, 2008 WL 111158, at *1, *adopting mem. and recommendation*, 2008 WL 111158, at *8. Given the recommended remand of this case on the grounds stated, the court declines to address other specific arguments raised by plaintiff.

## V. CONCLUSION

For the foregoing reasons, IT IS RECOMMENDED that plaintiff's motion (D.E. 27) for judgment on the pleadings be ALLOWED, the Commissioner's motion (D.E. 29) for judgment be DENIED, and this case be REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Recommendation.

In making this ruling, the court expresses no opinion on the weight that should be accorded any piece of evidence. That is a matter for the Commissioner to decide.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 7 July 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 23rd day of June 2014.

James E. Gates
United States Magistrate Judge